UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARMAINE S. BURDEN,<br><br>    Plaintiff,<br><br>    v.<br><br>ROBERT SERAFIN, et al.,<br><br>    Defendants. | Case No. 22-cv-03479-DMR<br><br>**ORDER RE MOTION TO STAY**<br><br>Re: Dkt. No. 46 |

Plaintiff Charmaine S. Burden alleges that her sibling, Robert Serafin ("R. Serafin"), defaulted on a loan she made to him on March 20, 2002. The loan was secured by a mortgage on a property located in San Ramon, California. Plaintiff seeks the imposition of an equitable lien against the property, a judicial foreclosure, and to recover the balance of the debt owed. She alleges that Defendants R. Serafin and Madeline Serafin ("M. Serafin") are married but separated, and that M. Serafin "has, or claims to have, some interest" in the property at issue. [Docket No. 1 ("Compl.") ¶¶ 3, 20.] M. Serafin now moves to stay this action pending resolution of Defendants' dissolution of marriage proceedings. [Docket Nos. 46 ("Mot."); 52 ("Reply").] Plaintiff opposed (Docket No. 50 ("Opp'n")) and R. Serafin did not respond. This matter is suitable for determination without oral argument. Civ. L. R. 7-1(b). M. Serafin's motion is granted.

I. **FACTUAL BACKGROUND**[1]

On March 20, 2002, Plaintiff loaned R. Serafin $290,000 in exchange for a promissory

---

[1] Plaintiff's opposition brief "incorporates by reference" pages 8 through 12 of her previously filed motion for partial summary judgment (Docket No. 47) and paragraphs 12 through 14 of her declaration in support of that motion (Docket No. 47-1). *See* Notice of Motion. Her declaration is filed "without the voluminous exhibits" even though the opposition brief cites to several documents in support of Plaintiff's recitation of "undisputed facts." *See id.* On April 3, 2023, the court denied without prejudice Plaintiff's motion for partial summary judgment, explaining that it

note. Compl. ¶ 4. Under the note, R. Serafin was to enter a mortgage as an additional protection to Plaintiff. *Id.* ¶ 6. On May 21, 2002, R. Serafin executed a mortgage on a property located in San Ramon, California (the "Property") but never recorded it. *Id.* ¶¶ 7, 8. The promissory note came due on March 20, 2012, and R. Serafin did not pay Plaintiff. *Id.* ¶ 9. Instead, on March 28, 2012, R. Serafin executed an amendment to the promissory note extending the term of the loan to March 23, 2017 in exchange for increasing the loan's principal amount and the interest rate, and paying additional penalties as further defaults occurred. *Id.* ¶¶ 10, 11. The loan continued to be secured by the mortgage under the amendment. *Id.* ¶ 12. Plaintiff alleges that M. Serafin claims a community property or other interest in the Property. *Id.* ¶ 15. No payments have been made to Plaintiff to-date and the loan is now again in default. *Id.* ¶ 13. Plaintiff seeks the imposition of an equitable lien against the Property and a judicial foreclosure of the lien. *Id.* at 4. She also requests that the court declare Defendants' rights, claims, ownership, liens, titles and demands subject, subsequent, and subordinate to the equitable lien, and that the court enter a money judgment against Defendants for $6,580,000. *Id.*

In support of her opposition to M. Serafin's motion to stay the case, Plaintiff provides additional facts which she claims are undisputed. *See* Opp'n at 3. Plaintiff asserts that when she made the $290,000 loan to R. Serafin, M. Serafin knew that Plaintiff and her husband had advanced these funds to R. Serafin to assist with his purchase of the Property. Opp'n at 4. Plaintiff further contends that, when R. Serafin executed the mortgage on the Property, he owned it as "his sole separate property." *Id.* Plaintiff claims that R. Serafin obtained funds to purchase the Property by selling a house located in Moraga, California in 1995 (the "Moraga House"), while he was not yet married to M. Serafin. *Id.* She further asserts that R. Serafin and M. Serafin established a family trust on May 18, 2001, which provides in relevant part: "All separate and quasi-community property shall remain the separate or quasi-community property, respectively, of

---

was premature and that determination of the instant motion to stay (filed prior to Plaintiff's motion for partial summary judgment) would likely affect the ruling on Plaintiff's early motion. [Docket No. 51.] Plaintiff cites no authority permitting the court to consider the exhibits attached to her motion for partial summary judgment. As the court's decision on the motion does not rely on the additional factual assertions in Plaintiff's opposition, the court need not decide the issue.

the contributing settlor." *Id.* at 5.  Finally, Plaintiff contends that she sent an email to R. Serafin copying M. Serafin on February 19, 2013 (the "email"), writing: "We gave you guys 300 grand to buy your house and for it to be equalized in mom and dads (sic) will.  I hate to state the obvious but Mom and dad have no financial planning and their only asset is that house and it will be used as their life savings." *Id.*  On January 8, 2014, R. Serafin replied "in a long and vitriolic email," stating in part: "I now see you only arranged the loan for the house back then so you can use it as a pretext to steal my entire $2M inheritance." *Id.*

R. Serafin admits all general allegations described in paragraphs 4 through 15 of Plaintiff's complaint; he seeks to enter into an agreement with Plaintiff to settle this matter.  [*See* Docket No. 16 (R. Serafin's Answer to the Complaint).]

M. Serafin, on the other hand, disputes Plaintiff's characterization of the facts.  *See* Mot. at 2-4.  First, she asserts that she and R. Serafin are involved in marriage dissolution proceedings currently pending in the Superior Court of California, Contra Costa County.[2]  [*See* Docket No. 46-1 (James G. Schwartz Decl., March 17, 2023) ¶ 2, Ex. A (M. Serafin's petition for dissolution of marriage filed on July 19, 2021).]  In addition, she claims that there are several factual questions regarding Defendants' ownership in the Property[3] and whether the $290,000 was a gift to Defendants or a loan to R. Serafin.  *See* Opp'n at 4.  M. Serafin contends that the email from Plaintiff to R. Serafin proves that the funds were a gift.  *Id.* at 3 (quoting the email: "…*We gave you guys 300 grand to buy the house and for it be equalized in mom and dads (sic) will.*" (emphasis in original)).  She also asserts that she was not aware of the promissory note between Plaintiff and R. Serafin until she filed for divorce.  *Id.*  She explains that R. Serafin refinanced the Property five times during their marriage, but never disclosed that he received a loan from Plaintiff in refinancing documents.  *Id.*  M. Serafin further claims that the Moraga House was transferred to

---

[2] Plaintiff does not appear to dispute that Defendants are parties to ongoing dissolution proceedings.  *See* Opp'n at 3.

[3] Plaintiff does not dispute that both R. Serafin and M. Serafin have at least some interest in the Property.  *See* Compl. ¶ 15 ("Plaintiff . . . alleges that Defendant Madeline Serafin claims a community property or other interest in the Property and that the obligations arising under the Loan Documents constitute a community debt arising from the marriage of Defendants Robert Serafin and Madeline Serafin, and incurred for the common interest of the spouses.").

her and R. Serafin as community property in July 2002, and that the Property was purchased with proceeds from the sale of the House in addition to Plaintiff's $290,000 gift. *Id.* at 3. According to M. Serafin, all of the Property's expenses, including mortgage payments, taxes, insurance, and maintenance fees were paid out of community property funds. *Id.* Ultimately, M. Serafin contends that Plaintiff and R. Serafin have "conspired to come up with a scheme about the loan in order to take away all of Madeline's community property rights in the divorce." *Id.*

## II.     PROCEDURAL BACKGROUND

Plaintiff initiated this action in federal court against Defendants on June 13, 2022. R. Serafin and M. Serafin subsequently filed cross-complaints against one another. [Docket Nos. 15, 21.] On August 18, 2022, Plaintiff sought to sever both cross-complaints pursuant to Federal Rule of Civil Procedure 21. [Docket No. 22.] M. Serafin also moved to dismiss several counts in R. Serafin's cross-complaint. [Docket No. 26.] On November 14, 2022, the court severed M. Serafin and R. Serafin's cross-complaints and dismissed the actions without prejudice to refiling in state court. [Docket No. 39.] The court denied M. Serafin's motion to dismiss as moot. On March 17, 2023, M. Serafin filed the instant motion seeking to stay the action pending the outcome of Defendants' dissolution of marriage proceedings.

## III.    DISCUSSION

In her motion, M. Serafin identifies three possible grounds for abstention: (1) the domestic relations exception to federal jurisdiction under *Ankenbrandt v. Richards*, 504 U.S. 689 (1992); (2) *Burford* abstention; and (3) *Younger* abstention. Because the court finds that abstention is appropriate under *Ankenbrandt*, it does not reach M. Serafin's additional arguments.[4]

The domestic relations exception "divests the federal court of diversity jurisdiction only in 'cases involving the issuance of a divorce, alimony, or child custody decree.'" *Bailey v. MacFarland*, 5 F.4th 1092, 1095 (9th Cir. 2021) (quoting *Ankenbrandt v. Richards*, 504 U.S. 689, 704 (1992)). Under *Ankenbrandt*, courts must "ask whether the plaintiff seeks an issuance or

---

[4] Plaintiff argues that the action should not be stayed under *Landis v. N. Am. Co.*, 299 U.S. 248 (1936). M. Serafin does not invoke a *Landis* stay in her opening brief; on reply, she agrees with Plaintiff that a *Landis* stay is not applicable in this case. *See* Reply at 6-7. Accordingly, the court does not address whether the action should be stayed under *Landis*.

4

1  modification of a divorce, alimony, or child-custody decree." *Id.* at 1096. "The exception

2  preserves jurisdiction for cases within the competency of federal courts while, at the same time,

3  preventing a party from making an end-run around a state-court status determination." *Id.* "[T]he

4  domestic relations exception is narrow." *Id.* at 1097.

5        Plaintiff argues that the domestic relations exception does not apply because the court is

6  not being asked to make or alter a divorce decree. Opp'n at 9. The court agrees. While overlap

7  with divorce proceedings may constitute grounds for abstention, it is insufficient to deprive the

8  court of subject matter jurisdiction. *See, e.g., Hao v. Chen*, No. 10-CV-00826-LHK, 2010 WL

9  3910165, at *4 (N.D. Cal. Oct. 5, 2010). Although Defendants are embroiled in dissolution

10 proceedings, Plaintiff is not seeking the issuance or the modification of a divorce decree. She

11 seeks the imposition of an equitable lien on a marital asset and the lien's judicial foreclosure.

12       M. Serafin's only citation to Ninth Circuit authority on this point is *Bailey v. MacFarland*,

13 which does not support her position. *See* Reply at 4. The court in *Bailey* explained that "[u]nder

14 *Ankenbrandt*, we ask whether the plaintiff seeks an issuance or modification of a divorce, alimony,

15 or child-custody decree." 5 F.4th at 1096. The domestic relations exception applied in *Bailey*

16 because the plaintiff was "seeking a modification of her divorce decree." *Id.* at 1097. As M.

17 Serafin herself notes, the Ninth Circuit concluded that the "[s]tate court [was] the appropriate

18 forum for interpreting the decree to determine whether [the defendant] is in breach . . . [and]

19 determining whether the decree should be modified on the ground that, at the time of the divorce,

20 [the defendant] fraudulently misrepresented the couple's ownership stake in [the corporate

21 entity]." *Id.*; *see also* Reply at 4. Notably, the court in *Bailey* "decline[d] to adopt the broad

22 version of the [domestic relations] exception embraced by some of our sister circuits." *Id.*

23       As the allegations in Plaintiff's complaint do not seek issuance or modification of a

24 divorce decree, this case does not fall within the narrow domestic relations exception articulated

25 by the Supreme Court and the Ninth Circuit. Accordingly, the court is not precluded from

26 exercising jurisdiction over the case.

27       Nevertheless, the Supreme Court in *Ankenbrandt* noted that abstention—as opposed to

28 dismissal for lack of subject matter jurisdiction—may be appropriate "in a case involving elements

of the domestic relationship even when the parties do not seek divorce, alimony, or child custody." 504 U.S. at 705 (citing *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943)).[5]  The Court went on to explain:

> This would be so when a case presents "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar." *Colorado River Water Conservation Dist., supra,* 424 U.S., at 814. Such might well be the case if a federal suit were filed prior to effectuation of a divorce, alimony, or child custody decree, and the suit depended on a determination of the status of the parties."

*Ankenbrandt*, 504 U.S. at 705–06.

In her opposition brief, Plaintiff contends that "[t]he incidental effect of this action on a single family law case in California will not interfere with any policy problem of substantial public import[.]" Opp'n at 11 (relying on *Ankenbrandt*).  She claims that "[f]or *Ankenbrandt*, the attenuated effect of that suit on state domestic relations laws was insufficient to transcend the result in the case before the Court . . . [and] [t]he same applies here."

Plaintiff's argument misstates the reasoning in *Ankenbrandt*.  There, the Court concluded that abstention was inappropriate on the facts present in that case because the status of the domestic relationship already had been determined as a matter of state law, and in any event, had no bearing on the underlying torts alleged.  Those circumstances are not present here – Defendants are involved in ongoing dissolution proceedings and the marital assets to be allocated in that case include the very Property subject to the declaratory relief sought by Plaintiff.

The Ninth Circuit has generally held that abstention is appropriate "when the core issue involves the status of parent and child or husband and wife." *Coats v. Woods*, 819 F.2d 236, 237 (9th Cir. 1987) (affirming abstention and dismissal of action challenging ex-spouse's interference with child custody), *cert. denied,* 484 U.S. 802 (1987).  In addition, at least one court in this district has interpreted Ninth Circuit law as "greenlight[ing] abstention where 'domestic relations

---

[5] While the narrow domestic relationship exception under *Ankenbrandt* is jurisdictional – that is, it provides an exception to diversity jurisdiction and precludes the exercise of federal jurisdiction – "courts generally use *abstention* in the context of a dispute relating to domestic relations when the controversy does not fall within the exact purview of divorce, alimony or child custody, but instead is closely related." *Kahn v. Kahn*, 21 F.3d 859, 860 n.1 (8th Cir. 1994) (emphasis added).

6

1    problems are involved tangentially to other issues determinative of the case.'" *Chan v. Exley*, No.

2    21-CV-09990-VC, 2022 WL 1027113, at *1 (N.D. Cal. Apr. 6, 2022) (quoting *Csibi v. Fustos*,

3    670 F.2d 134, 137 (9th Cir. 1982))).

4       The First Circuit's application of *Ankenbrandt* in *DeMauro v. DeMauro* is particularly

5    instructive here because of its factual similarities. *DeMauro* involved a civil claim under the

6    Racketeer Influenced and Corrupt Organizations Act ("RICO") "directed to the same property that

7    [was] going to be allocated between the parties as a result of the [divorce] decree." 115 F.3d 94,

8    99 (1st Cir. 1997). The First Circuit held that abstention—in the form of a stay of the action rather

9    than dismissal—was appropriate because of "the possible interference that a civil RICO action at

10   this time might cause to the state court's decision as to how to divide property in the divorce."

11   115 F.3d at 98. The court explained:

> Not only divorce, but the allocation of property incident to divorce, are longstanding local functions governed by state law. *Ankenbrandt*, while curtailing the domestic relations exception, nevertheless made clear the priority given the state resolution of family law issues, including alimony determinations. Divorces are frequently accompanied by disputes about property, including both interim and final allocations. Such state court authority would be threatened if civil RICO actions become the shadow proceeding for policing such disputes.

17   *Id.* at 99. The First Circuit concluded that abstention was permissible because the property at

18   issue in the federal action was "the very subject of [the] pending divorce proceeding," and a stay

19   would "reduce the risk of interfering with interim state allocations and permit the court to tailor

20   any final federal judgment to avoid undermining the divorce court's allocation of property." *Id.*

21      Here too, Plaintiff's claims ask the court to make several determinations that are doubtless

22   at issue in Defendants' dissolution proceedings. For example, the state court will have to

23   determine the nature of M. Serafin and R. Serafin's interests in the Property and allocate that

24   interest accordingly. *See* Schwartz Decl., Ex. A (M. Serafin's petition for dissolution of marriage

25   filed on July 19, 2021) (requesting that the court confirm "any and all assets which are currently

26   unknown to Petitioner" as separate and community property). Related to that determination, the

27   state court will likely examine whether R. Serafin had a right to place a mortgage on the Property,

28   and the effect, if any, of that mortgage on Defendants' respective interests in the Property. *See*

1  Mot. at 6.  M. Serafin also contends that the state court will have to decide whether the debt owed
2  to Plaintiff is Defendants' community property or R. Serafin's separate property.  *See id.*  The
3  court agrees with M. Serafin that any action by this court to determine the parties' rights and
4  obligations over the Property will inevitably interfere with the state court's responsibility to
5  confirm and allocate marital assets and liabilities.  *See H.C. ex rel. Gordon v. Koppel*, 203 F.3d
6  610, 613 (9th Cir. 2000) ("A state has a vital interest in protecting the authority of the judicial
7  system, so that its orders and judgments are not rendered nugatory. . . . This is a particularly
8  appropriate admonition in the field of domestic relations, over which federal courts have no
9  general jurisdiction . . . and in which the state courts have a special expertise and experience."
10  (internal quotation marks and citations omitted)).

11  Plaintiff claims that there is no risk of interference between the federal and state cases
12  because "[e]ven if the state court were to agree [that Madeline has an interest in the Property], the
13  interest of the husband and wife in real property are junior to encumbrances, including property
14  taxes and mortgages."  Opp'n at 8.  Even assuming Plaintiff's statement of the law is correct, her
15  argument ignores that the complaint seeks several forms of relief, including judicial foreclosure.
16  If this court were to order the sale of the Property and the state court then determined that the same
17  property ought to be allocated to M. Serafin, those judgments would necessarily conflict.  At the
18  very least, the state court's intended allocation of the Property could be frustrated.  *See DeMauro*,
19  115 F.3d at 99.  As in *DeMauro*, a stay of the action would "reduce the risk of interfering with
20  interim state allocations and permit the federal court to tailor any final federal judgment to avoid
21  undermining the divorce court's allocation of property."  115 F.3d at 99.

22  Under these circumstances, the court finds that abstention is appropriate.  A stay in this
23  matter will allow the state court to preside over Defendants' dissolution proceedings without
24  interference from this court.

25  **IV.   CONCLUSION**

26  For the foregoing reasons, M. Serafin's motion to stay the action pending resolution of
27  Defendants' dissolution proceedings is granted.  The Clerk shall administratively close the case.
28  Within two weeks of the conclusion of the dissolution proceedings, the parties may reopen the

case by filing a joint status report.

**IT IS SO ORDERED.**

Dated: May 22, 2023

_____
Donna M. Ryu
Chief Magistrate Judge